Freeman, J.,
delivered the opinion of the Court.
This is ah action of trespass, commenced by Burch-field, defendant in error, on the 10th of August, 1865, against complainant in error, and one Taylor, in the Circuit Court of Jefferson County.
The case was tried at April Term, 1867, by a jury under the charge of the Court. Taylor was found not guilty; but a verdict of guilty was returned as to Moore, and the damages assessed at $8,000; upon which judgment was rendered by the Court. A new trial was moved for by Moore, which was overruled' by the *204 Court, and an appeal in the nature of a writ of error taken by him to this Court.
A reversal of this judgment is asked by plaintiff in error, on the ground tbat the damages are excessive. The well-settled and long-established rule, not only of this Court, but of the courts of the other States of this Union, as well as those of England, is, that a verdict of a jury in cases of pure tort, such as this, will not ■ be disturbed or set aside, except “where the amount of damages is so flagrantly outrageous and extravagant as necessarily to evince intemperance, passion, partiality or corruption on the part of the jury.” 5 Cowen, 120; Boyers v. Pratt, 1 Hum., 90; McConnell v. Hampton, 12 J. R., 236.
Let us examine the testimony in this case, and see if this verdict can be allowed to stand, under a sound application of the rule to the facts of the case.
The declaration alleges in substance, that “the defendant, on the — day of May, 1863, with force and arms, did beat, bruise, wound and ill-treat the plaintiff, and arrested him, without any authority of law whatever, and then and there imprisoned and detained him in prison there, without any reasonable or probable cause whatever, for the space of six months,” &c.
It seems from the proof, that complainant in error was an enrolling officer, or acting under the Confederate conscript law, as conscript officer, and as such sent one Sartain and others of his party, out in search of parties subject to conscription. In pursuance of this purpose, they arrested plaintiff Burchfield. When the parties approached him he fled and was fired at, but not struck; *205 was pursued, and, the witness says, run over by a horse of some of the party, whether accidentally or on purpose he does not know. He seems not to have been seriously hurt, however. "When he was arrested, Campbell, one of the party arresting him, cursed and abused him, about the time he was brought to where Moore was; but when Moore heard it, he “interfered,” in the language of witness, “and made him hush.”. He was started off under charge of a squad, to Dandridge; but on the way they stopped at a house to procure something to eat, and Burchfield escaped, and was never arrested again. He was only under arrest, it seems, a few hours; perhaps not more than from three to five hours, if so long; certainly not longer than the evening of the day of his arrest.
This is the substance of the testimony as to the facts of the arrest. It is not shown that Moore, or any of the party, had any ill feelings towards Burchfield, or that they sought to arrest him more than others, subject, as they believed, to conscription.
Upon this statement of facts, can it be said that a judgment for $8,000 damages was the deliberate judgment of an impartial and dispassionate jury? Will not every man who hears this verdict, at once feel that there were other elements mingled in the investigation and determination of this case, that led to the finding of this sum as their verdict by the jury? more controlling than the simple facts of the case? Would not every impartial man at once, on hearing of the amount of this verdict, say that it must have been the result of passion, ■ intemperance or partiality? and *206 that such a sum was extravagant and outrageous, as damages, to be recovered by one neighbor from another, for an injury that did not seriously affect his life or limb, and but at most only gave, serious annoyance and disquiet for a few hours, and inflicted only very slight hurt to his person, not enough to prevent his carrying two guns, and making his escape in safety from his captors? ■ We think no sober, thinking man, could fail to come to the conclusion we have indicated.
We admit the full force of the argument drawn from the peculiar circumstances of the times in which this arrest was made, and that an arrest in such times was calculated to create the most serious apprehensions on part of a party arrested, whether such arrest was by the military authorities of the one party or the other. But then it must be remembered that all were alike involved in the annoyances and troubles that grew out of our late civil strife, and that defendant in error can not claim that he was made an exception, or singled out from other citizens as a peculiar mkrk for any private vengeance or hate; for it seems that Moore was engaged in conscripting generally, as ■ an officer of the army, to which he belonged,- and so far as we can see, acted, as he believed, in the discharge of a duty imposed upon him by reason of his being an officer and a soldier, whose business it is to obey the orders of his superior officer, without question, in most, if not in all cases.
That the damages in this case are far more than would have been given if the trespass had been committed before the passions of our people had been aroused by our late unfortunate civil strife, all will at once admit. This *207 shows at once that passions and prejudices that have thus been kindled, certainly were. that additional element, added to the evidence before the jury, which produced this enormous, and in our judgment, most extravagant verdict.
It has been well said by Chief Justice Best, on the subject of jury trials, that “it. is one of the most beautiful parts ' of our Constitution, that when anything occurs in one tribunal which appears to be wrong, it may be af-terwards corrected by another, so that the interests of a party cannot be prejudiced by a hasty decision; otherwise, the trial by jury, instead of being a blessing, would become a source of evil.”
We feel it to be our duty in this case to give the party a new trial, when his case may be submitted to another jury, and a calm, impartial and dispassionate investigation be had, in which a verdict may be rendered more in" accord with the real damages sustained, taken in connection with all the circumstances of aggravation that may be presented by the evidence, if any there be, than the one now under consideration.
There are several other questions of interest presented in the record, but as the authorities are not at hand to which we are referred, so as to enable us fully to investigate them, we content ourselves by deciding the one question of excessive damages allowed by the jury.
Let the case be reversed, and cause remanded for new trial.